# **EXHIBIT 2**

BEFORE THE AMERICAN ARBITRATION ASSOCIATION

JAZWARES, LLC,                                          Case No.: 01-24-0006-6240

    Petitioner,

v.

SUNIL WILLIAM MOOTHEDATH,

    Respondent.
_____/

## FINAL AWARD

This cause came before this arbitrator upon final hearing held on February 10th and 11th, 2025. Therein, Petitioner Jazwares, LLC ("Jazwares") sought: a) a finding of liability against Sunil William Moothedath ("Moothedath") under the Confidentiality and Non-Disclosure Agreement (the "NDA") and the Independent Contractor Agreement (the "ICA") entered into between Jazwares and Moothedath; b) a finding of nominal damages which would entitle Jazwares to a finding of breach by Moothedath justifying injunctive relief against Moothedath; c) entry of a permanent injunction against Moothedath prohibiting further breaches of the confidentiality and non-disparagement provisions of the NDA and the ICA; d) a finding that Jazwares is a prevailing party in this arbitration; e) entry of an award of arbitration fees in Jazwares's favor; and f) entry of an award of attorneys' fees and costs in Jazwares's favor. As established more fully herein, this arbitrator finds in favor of Jazwares and enters award in favor of Jazwares.

### THE ICA

Moothedath relied extensively on a version of the ICA that was signed by Moothedath but never counter-signed by Jazwares (the "Unsigned ICA") dated April 22, 2022. The more credible evidence supports the conclusion that there was never a meeting of the minds regarding

1

the Unsigned ICA. Notably, Moothedath conceded that Jazwares paid all fees due under the Unsigned ICA.

## JURISDICTION OF THE ARBITRATOR

Annex A to the ICA signed by Jazwares on May 26, 2022, clearly provides this Arbitrator with jurisdiction over this matter and no objection to jurisdiction was raised in these proceedings.

## FINDINGS OF FACT

1. Moothedath executed the Unsigned ICA on April 22, 2022, which was never signed by Jazwares.

2. On May 26, 2022, Jazwares re-sent the ICA to Moothedath. That same day, Moothedath returned the signed ICA to Jazwares. Thus, this contract is the operable document herein.

3. Moothedath executed the NDA on April 22, 2022, which was countersigned by Jazwares.

4. The Unsigned ICA permitted Jazwares "the unilateral right, at any time, without notice, in the Company's sole and absolute discretion, to terminate Independent Contractor's engagement hereunder, without cause, and for any reason or for no reason. If the Company elects to terminate Independent Contractor's engagement hereunder, the Company's obligations to Independent Contractor under this Agreement will be fully performed by payment to Independent Contractor for the Services completed as of the date of termination."

5. Moothedath conceded that Jazwares paid him all funds owed through May 26, 2022, when Moothedath executed the ICA.

6. The project at issue in this dispute is a project related to Pikachu.

7. There is no dispute regarding any invoices submitted from Moothedath to Jazwares before Invoice Number 1013.

8. The first date on Invoice Number 1013 is August 29, 2023.

9. On August 14, 2023, before beginning work on the Pikachu project, Jazwares reminded Moothedath of the need to have a binding NDA. Jazwares additionally indicated that the concept for the Pikachu toy needed to be approved by the ultimate purchaser by the end of October 2023.

10. On August 30, 2023, Moothedath informed Jazwares that his hourly rate here was $150. In the same email, Moothedath indicated that his estimate was "For the first model including cost for purchases is 6.9K$ and for the engineering model 25K$."

11. The ICA required Moothedath to "submit a quote for Services to be rendered and shall not begin work until Independent Contractor has received confirmation that the quote has been signed and approved by an authorized signatory." Consequently, Jazwares used Moothedith's estimate of $6900 for Stage 1.

12. Moothedath submitted an invoice for $6,900 on August 29, 2023, which was paid in full.

13. For Stage 2, Moothedath provided a "cost estimate . . . of 25K. I will make it work." With respect to Stage 2, Moothedath collaborated with Jazwares to create a scope of work for approval for $24,000. This was ultimately increased to $30,000 based on Moothedath's failure to include the need for cost for a seamstress.

14. Though the estimate for Stage 2 was increased, it always included a deadline of October 27, 2023. However, on October 25—two days before the stated deadline—Moothedath first indicated that he would need additional time to complete Stage 2.

15. On the same day, Jazwares responded that "At the end of next week please turn over your working model (model successfully Run, Walk, Jump, and Turning of Head and ears). I expect the CAD will reflect the working model as that's part of the deliverable."

16. Despite the additional time from Jazwares and the need for the toy sample, October 25, 2023, Moothedath advised Jazwares that "the dates I have suggested will be based on a clear written agreement to that effect. I will be stopping all work until such an agreement is signed by legal firstly before it is sent to me for countersigning." In short, Moothedath was topping work. In the same email chain, for the first time, Moothedath indicated that his hourly rate was actually $250. All prior invoices since May 26, 2022, indicated $150 per hour and had been paid.

17. On October 26, 2023, Moothedath wrote that "I have provided way beyond what you have paid for, and I look forward to you compensating me for my work and time even though it did not result in a finished model on time. Please note that all the work so far is my IP and you cannot use it in any way without my written consent as an inventor." Moothedath was, in fact, an independent contractor.

18. After the October 26, 2023, email, a call took place between Moothedath and Jazwares representatives, Hayley Thislethwaithe ("Thistlethwaithe") and Susan Atoian ("Atoian"). During that phone call, Jazwares reminded Moothedath of his obligations under the ICA. Jazwares also informed Moothedath that he would not receive additional work from Jazwares if he simply failed to meet schedule and expected full payment without delivering a deliverable.

19. On October 27, 2023, Moothedath wrote back that "I am willing to continue the work to finish this project under the current agreement. You have already paid all the money due

for this project and we are in agreement to finish this project as soon as possible. We are also in agreement about the IP on this project, we will follow the ICA signed April 22, 2022."

20. Moothedath issued the following invoices to Jazwares for the Pikachu project:

   a. 1013 – August 29, 2023 - $6,900.00
   b. 1014 – September 8, 2023 - $6,000.00
   c. 1015 – September 22, 2023 - $6,000.00
   d. 1016 – September 30, 2023 - $6,000.00
   e. 1017 – October 6, 2023 - $6,000.00
   f. 1018 – October 13, 2023 - $6,000.00
   g. 1019 – October 20, 2023 - $6,000.00 with $6,000.00 discount to $0.00
   h. 1020 – October 27, 2023 - $6,000.00 with $6,000.00 discount to $0.00
   i. 1021 – November 30, 2023 - $84,500.00

21. With the exception of Invoice No. 1021, all of the invoices were paid by Jazwares. The first estimate of the $84,500.00 invoice provided to Jazwares was on November 30, 2023. In fact, the $84,500.00 estimate/invoice was submitted after the delivery of the Pikachu sample which was proved to be unacceptable.

22. Two separate Jazwares employees testified that the Pikachu delivered by Moothedath was not a manufacturable prototype and that no portion of the Pikachu project delivered to Jazwares could be used.

23. In submitting the $84,500.00 invoice, Moothedath noted that "Our agreement does not require you to make any payments, but you know the effort that was put into it." Despite this assertion, on December 31, 2023, Moothedath re-sent the $84,500.00 invoice and on January 4 and 5, 2024, Moothedath demanded that the invoice be submitted for processing.

24. On February 21, 2024, Jazwares provided Moothedath with notice that it would not be paying the additional invoice. That same day, Moothedath acknowledged that "you/Jazwares are justified in refusing to pay for any additional (but required) work and the subsequent costs incurred by me." Notably, the $84,500.00 invoice contained a number of hourly rates and apparently included work by third parties without the approval of Jazwares. This was in violation of the operative contract.

25. On June 5, 2024, Moothedath admitted that he had posted a video of the Pikachu on social media despite the signed NDA.

26. On July 4, 2024, Moothedath attempted to "take back any acknowledgement" that no payment was owed. Also, on or about July 4, 2024, Moothedath made a comment on social media on the Toy Association's LinkedIn website, intended for Jazwares' Chief Brand Officer Jeremy Padawer, to "Pay your bills. Your company is pathetically dishonest when it comes to paying people that do good work. Talk to your lawyer Jack Elum and the incompetent George Vorkas!"

27. Moothedath admitted that the post on LinkedIn was not isolated, and he posted a "lot" of times regarding Jazwares and Jazwares employees, Judd Zebersky, Laura Zebersky, George Vorkas, and David Neustein.

28. Jazwares was provided two quotes by Moothedath totaling $36,900.00 for the Pikachu project. Jazwares paid Moothedath a total of $36,900.00 related to the Pikachu project.

29. Moothedath, during the course of the arbitration—and prior to the final hearing, filed at least one Bar complaint against Jazwares' counsel claiming that there was a fraudulent claim pending. There is no fraudulent claim.

A. **There is jurisdiction over Moothedath, who has been afforded procedural due process at every step of the arbitration proceeding, including at the final hearing.**

B. **Jazwares has established multiple contractual breaches committed by Moothedath.**

   i. *The NDA and ICA are enforceable.*

   ii. *Moothedath committed material breaches of contract.*

Moothedath also did not dispute that he violated the confidentiality provisions of both the NDA and the ICA by both posting the video of the Pikachu and making at least five different social media posts disparaging Jazwares.

To combat this, Moothedath argued that Jazwares breached first by failing to pay his $84,500.00 invoice. This is contradicted by the many instances in which Moothedath confirmed that no further payments were owed. Therefore, there is no defense that Jazwares first breached the NDA and ICA.

   iii. *The third element of breach is damages.*

Under Florida law, nominal damages are assumed for a breach of contract. Here, the arbitrator may properly presume that Jazwares suffered damages given the repeated breaches of confidentiality by Moothedath.

   iv. *Jazwares performed its contractual duties.*

Moothedath attempted to do unapproved work and bill Jazwares for it (nearly three times the amount already agreed to and paid) this is not a breach by Jazwares. Jazwares did not benefit from this additional work, as Jazwares found the Pikachu deliverable from Moothedath non manufacturable and ceased the project.

C. **Award of Liability for Declaratory Judgment.**

7

Jazwares sought a declaratory judgment against Moothedath that Jazwares owed Moothedath no further funds regarding the Pikachu project.

Jazwares is entitled to a declaration that it owes Moothedath nothing more beyond the $36,900.00 already paid for the Pikachu project.

### D. Moothedath has failed to establish his claims.

Moothedath has failed to establish his counterclaims against Jazwares and takes nothing by them.

### E. Jazwares is a prevailing party.

Based on the arbitrator's findings, Jazwares is a prevailing party. Jazwares prevailed on significant issues in this litigation. As such I Award nominal damages in the amount of $2500

### F. Jazwares is entitled to attorneys' fees and costs.

Under the ICA and the Arbitration Provision, Jazwares is entitled to prevailing party attorneys' fees and costs. Jazwares submitted a declaration in support of this claim. Therein, Jazwares established that it seeks $99,043.45 in attorneys' fees and costs. Moothedath's challenges to this are overruled.

Moothedath complicated the proceedings and made serious claims of forgery and lodged Bar complaints against both primary counsel for Jazwares claiming that the claims here were false. That cannot be countenanced. As a result, the arbitrator finds that $99,043.45 and the rates charged reasonable.

Jazwares also seeks $12,683.08 in taxable costs.

Jazwares is awarded $99,043.45 in attorneys' fees and $12,683.08 in taxable costs as a prevailing party.

Under the ICA and the Arbitration Provision, Jazwares is entitled to prevailing party attorneys' fees and costs. This is consistent with the AAA's Commercial Arbitration Rules and Mediation Procedures Administrative Fee Schedules, which provides that "*Arbitrator compensation is not included in either schedule.* Unless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award."

Under American Arbitration Association Commercial Rule 54, "All other expenses of the arbitration, including required travel and other expenses of the arbitrator . . . shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." Rule 58 provides that "The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator."

Jazwares submitted a declaration setting forth $30,137.50 in arbitration costs. Given the conduct of Moothedath in multiplying the proceedings, which he admitted were simply because he did not feel suing for $84,00 was a large enough amount so he added a specious counterclaim to these proceedings, the arbitrator finds it appropriate to award the costs of arbitration to Jazwares under the circumstances.

Jazwares is awarded $30,137.50 in arbitration costs.

**G. Jazwares is entitled to a permanent injunction.**

Under the ICA and the Arbitration Provision, as well as supplemental relief under Florida Declaratory Judgment Act, the arbitrator may award injunctive relief. The findings of the arbitrator make clear that Moothedath has acted with little regard for the provisions of the NDA and ICA and has no intention of doing so on a forward-looking basis.

The arbitrator finds that Jazwares has established a contractual right under the NDA and ICA to confidentiality, which Moothedath has admitted to breaching. In this case, the arbitrator finds that Jazwares is entitled to a permanent injunction.

Therefore, the arbitrator orders that:

The NDA and ICA are valid and enforceable contracts. Therefore, Moothedath shall immediately cease violating the NDA and ICA regarding all projects completed thereunder, but particularly the Pikachu project, for which Jazwares paid all sums due to Moothedath. Moothedath shall abide by the NDA and ICA permanently regarding all projects completed under either or both, especially the Pikachu project. This injunction covers all forms of communication whatsoever. Violations of this injunction, which may be confirmed by a court of competent jurisdiction, are enforceable by Jazwares, potentially by findings of contempt if Moothedath further violates the NDA and ICA.

**H. Final Award.**

This arbitrator finds and awards as follows:

I. The undersigned declares Jazwares owes Moothedath no further sums for the Pikachu project. Moothedath has been paid in full.

II. Jazwares is a prevailing party.

III. Jazwares is awarded $99,043.45 in attorneys' fees and $12,683.08 in costs as a prevailing party in this arbitration.

IV. Jazwares is awarded $30,137.50 in arbitration costs as a prevailing party in this arbitration.

V. Jazwares, LLC, of 7850 SW 6th Ct., Plantation, Florida 33324, is awarded a total judgment in its favor against Sunil William Moothedath, of 2706 Alpina Court, Pleasanton, California 94588, in the amount of $141,864.03, to bear interest at the post-judgment interest rate established by Florida law (at Section 55.03, Florida Statutes), until such time as this judgment is satisfied, and for which let

|      |                                                                                                                                                                                                                                                                                                                                                                                                                                              |
|------|----|

VI. Any claims not addressed herein are dismissed.

VII. Sunil William Moothedath shall complete under oath, Florida Rules of Civil Procedure Form 1.977 Fact Information Sheet, including all required attachments, pursuant to Rule 1.560, Florida Rules of Civil Procedure, and serve it on the Plaintiff's attorney, Zachary D. Ludens, Shaw Lewenz, LLLP, 110 SE 6th St., Suite 2900, Fort Lauderdale, Florida 33301, zludens@shawlewenz.com, within forty-five days of the entry of this award.

VIII. Moothedath is permanently enjoined as follows:

The NDA and ICA between Jazwares and Moothedath are valid and enforceable contracts. Therefore, Moothedath shall immediately cease violating the NDA and ICA regarding all projects completed thereunder, but particularly the Pikachu project, for which Jazwares paid all sums due to Moothedath. Moothedath shall abide by the NDA and ICA permanently regarding all projects completed under either or both, especially the Pikachu project. This injunction covers all forms of communication whatsoever. Violations of this injunction, which may be confirmed by a court of competent jurisdiction, are enforceable by Jazwares, potentially by findings of contempt if Moothedath further violates the NDA and ICA.

The administrative fees and expenses of the American Arbitration Association totaling $4,700.00 shall be borne by Respondent, and the compensation and expenses of the arbitrator totaling $14,740.00 shall be borne by Respondent. Therefore, the Respondent has to pay Business, an amount of $19,440.00, which is stated and included in the above paragraph IV.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

I hereby certify that this Award was made in Broward County, Florida, on this 5th day of March, 2025.

Hon. Amy N. Dean (Ret.), Arbitrator

11